## LIABILITY FOR A GAS EXPLOSION IN A VILLAGE OWNED OPERA HOUSE.

Court of Appeals for Wayne County.

THE VILLAGE OF ASHLAND v. T. R. MARKS.

Decided, January Term, 1913.

*Negligence—In the Installation of a Gas Heater in a Public Building—Fire Results and One of the Tenants Loses His Stock of Goods—Liability for the Loss.*

The village of A, through its council, entered into an oral contract with a natural gas company whereby there was to be installed, as an experiment, certain heating apparatus in the opera house building owned by the village, said apparatus to be paid for by the village if found satisfactory, otherwise to be removed by the gas company. Members of council directed where the heater should be placed, and one of their number supervised its installation and inspected the work after it was done. Two days later there was an explosion and the building was destroyed by fire, as a result of which the court found there was negligence in the installation of the heater. The plaintiff below was a tenant of the building, occupying one of the store rooms on the ground floor with a stock of goods which was destroyed in the burning building. In his suit for damages on account of his loss he claimed both the village and the gas company parties defendant. The trial judge dismissed the gas company from the case on demurrer. Subsequently the village in defending claimed that the plaintiff locked the door of his store, and thus prevented the saving of at least a part of his stock of goods. The court entered judgment against the village for an amount which covered a part of the loss sustained. *Held*:

1. That the gas company was not an independent contractor in the installation of the heater, and under the rule of *respondeat superior* was properly dismissed from the case.
2. That the negligence of the village was of a character which under the circumstances of the case rendered it liable to its tenant for some measure of the loss he sustained.
3. That the village was protected by the charge of the court with reference to the alleged negligence of the plaintiff in locking his door and failing to use due diligence in the removal of his goods; and the verdict of the jury indicates that they had regard to the in-

struction of the court in that respect, inasmuch as the verdict which they returned was for less than the value of the goods destroyed.

4. While it is the better practice to file an amended petition from which a defendant who has been dismissed from the case has been eliminated, yet where this has not been done and the original petition is sent to the jury room without objection being made thereto, and the jury is instructed to disregard all averments regarding the defendant who has been dismissed, a reviewing court will not treat the sending of the original petition to the jury room as error.

MARRIOTT, J.; VOORHEES, J., and SHIELDS, J., concur.

This case comes to this court on petition in error from the Court of Common Pleas of Wayne County.

The case had its origin in Ashland county, Ohio. The suit was originally filed by F. R. Marks against the village of Ashland to recover for damages to certain property of the plaintiff destroyed by fire, claimed to have been caused by the negligence of the officials of said village, managing and controlling the opera house building owned by the village.

The original petition was filed on February 12, 1904, and the case has had a somewhat varied career in the courts from that time to the present.

The plaintiff claims that he occupied a room on the lower floor of the opera house building, in which he conducted a general supply store, dealing in stoves, tinware, etc., and also stored his wares under a contract of lease with the said village.

The cause was first tried to a jury, resulting in a disagreement, and thereafter the plaintiff amended his petition, making the Logan Natural Gas & Fuel Company a party defendant, charging joint negligence of the village and said gas company. The gas company answered, and the cause went to trial upon the issues joined by the pleadings, at the October term of the Court of Common Pleas of Ashland County, to-wit, January 11, 1907, resulting in a verdict in favor of the plaintiff against the Logan Natural Gas Company for $500. A motion for a new trial was filed, overruled, and judgment rendered upon the verdict. The plaintiff below also filed a motion for a new trial, which was overruled, and both parties prosecuted error to the circuit court.

The cause was heard in the Circuit Court at the May term, 1907, where the judgment against the gas company was reversed, the circuit court holding that Marks, under the pleadings, could not maintain as matter of law his action or recover against the gas company, and that the court below erred in refusing to give to the jury certain charges requested by the gas company, and it was ordered that said judgment and proceedings of the court of common pleas against the gas company be, and the same were, reversed, set aside and held for naught, and the gas company restored to all things lost by reason of the judgment, and the cause was remanded to the Court of Common Pleas of Ashland County, to be proceeded in according to the rights of the parties.

The proceedings in error prosecuted by Marks against the village of Ashland, upon a petition in error, were heard by the circuit court at the November term thereof, 1907, where the record shows that the cause came on to be heard upon the petition in error, bill of exceptions, original papers and pleadings, and upon consideration whereof the judgment of the court of common pleas was reversed, for the reason that the court of common pleas erred in its charge to the jury and erred in rendering judgment against the plaintiff in error, F. R. Marks, and the cause was remanded to the Court of Common Pleas of Ashland County for a new trial and to be proceeded in as provided by law.

Thereafter, on November 24, 1908, a motion by the plaintiff, Marks, was filed, praying for a change of venue, which motion was heard December 5, 1908, and by order of the court the cause was transferred from Ashland county to Wayne county, upon the ground, as the entry shows, "that a fair and impartial trial of the cause could not be had in Ashland county."

After the cause was transferred to Wayne county, the defendant, the Logan Natural Gas & Fuel Company, withdrew its answer and filed a demurrer to the petition, upon the ground that the petition did not state facts sufficient to constitute a cause of action against the gas company. This demurrer was sustained by the court, and the gas company dismissed from the action, and the cause, as between the plaintiff and the village, came on

to trial before a jury at the October term of court, to-wit, No-
vember 23, 1911, resulting in a verdict in favor of the plaintiff,
Marks, against the village of Ashland in the sum of $5,690.

Motion for a new trial was filed by plaintiff in error, the vil-
lage of Ashland, overruled, and judgment entered upon the ver-
dict, to reverse which judgment these proceedings in error are
now prosecuted to this court.

The petition in error alleges numerous grounds of error, but
the principal grounds urged by plaintiff in error are: (1) That
the verdict of the jury was not sustained by the evidence; (2)
That the court erred in sustaining the demurrer filed by the gas
company to the petition; and (3) in dismissing the gas company
from the case.

The circuit court having had the question of the sufficiency
of the petition before it in the proceedings prosecuted from the
Court of Common Pleas of Ashland County, and having there
held, as the entry shows, that the plaintiff below, F. R. Marks,
under the pleadings could not maintain, as matter of law, his
action or recover against the gas company, this court will not
review that finding, and therefore hold that there was no error
in the judgment of the court below in sustaining the demurrer
filed by the gas company to the petition.

This court is in accord with the finding of the circuit Court of
Ashland County in its holding that the plaintiff below, under
the averments of the petition, had no right of action against the
Logan Natural Gas & Fuel Company, nor could he recover in
this action against that company.

Under the averments of the petition it is not shown or claimed
that there was any contractual relation between the gas com-
pany and the plaintiff Marks, that there was any privity of con-
tract between Marks and the Logan Gas Company. This being
admitted, Marks could not recover against the gas company for
any failure upon its part to properly perform its contract made
with the village.

On the contrary the petition avers that the contract or per-
mission under which the gas company installed the alleged dan-
gerous and unsafe heating apparatus in the auditorium of the
opera house was made between the village and the gas company;

that the gas company performed its work in a negligent, care-
less, improper and unsafe manner, by reason of which careless-
ness on the part of the gas company the building was burned
and plaintiff's property destroyed.

Under the averments of the peition we think there was no
cause of action shown entitling the plaintiff to recover against
the gas company.

In 4 C. C. Rep., 471, which case was affirmed without report
in 52 O. S., 623, the doctrine here referred to is distinctly held.
There the gas company entered into a contract with S. Bros. to
install a fixture for heating by natural gas a steam boiler. The
first time it was used the boiler exploded, and the claim was
made that the explosion was caused by reason of the negligence
of the gas company in putting in and connecting up the fixtures.
But it was held that the contractual relations of the gas com-
pany were with S. Bros. alone; that there was no contractual
relation between the gas company and the engineer; that the
gas company owed no duty to the engineer that rendered it lia-
ble to him for the alleged negligence.

In the case of *Morrissey* v. *City of Cincinnati*, 14 C.C.(N.S),
19, and which in its facts is very similar to the case at bar, the
plaintiff brought suit against the city as well as the contractor,
alleging a joint liability and charging negligence against Ma-
honey, the contractor.

A demurrer was filed to the petition, as in the case at bar,
upon the ground that the petition did not state facts sufficient
to constitute a cause of action against the contractor. The de-
murrer was sustained and Mahoney dismissed from the case.
The cause then proceeded to trial upon the issues made by the
petition and the answer of the city, and at the close of plaint-
iff's testimony the case was withdrawn from the jury and judg-
ment rendered against the plaintiff.

The question of ''independent contractor'' was raised in that
case, as in this. The case at bar is a much stronger case for
the application of the rule discussed. In the case at bar there
is no specific contract averred or shown in the record between
the village of Ashland, the owner of the opera house, and the
gas company, under which the gas company was to install the

heater. The averment is that the "defendant, the village of Ashland, authorized and permitted the defendant, the Logan Natural Gas & Fuel Company, to install a dangerous and unsafe heating apparatus in the auditorium of the opera house as an *experiment,*" etc.

We think it quite clear that under the averments of the petition the relation of master and servant existed between the village and the gas company, and not the relation of an "independent contractor."

The general rule is that if the master authorizes or directs the doing of a particular thing, he is liable for the negligence of the servant, and if he employs another to do for him a particular thing, under his immediate authority or control, the master is still liable; that this liability rests upon the general rule of *respondeat superior.*

We think the court did not err in sustaining the demurrer of the gas company to the petition, and in dismissing the company from the case.

It is further contended by the plaintiff in error that the verdict of the jury was not sustained by the evidence. It is claimed "that the proof does not show by a preponderance of the evidence that the fire in question originated at the heater." On the contrary it is contended that the fire which destroyed the building originated upon the stage, from furnaces under the stage, which had long been in use and which were far removed from the newly installed gas heater.

The testimony as to the origin of the fire was quite conflicting, but we have read the entire record, and we think the evidence fairly establishes the contention of the plaintiff below that the fire started at the gas heater, and was the result of negligence and carelessness in placing and installing the same, and that the verdict of the jury was warranted by the evidence shown in the record.

The petition charges negligence on the part of the village in installing and placing in the auditorium of the opera house an apparatus for heating the auditorium with natural gas; that the same was by the authority and permission of the village installed by the gas company in "a negligent, careless, improper

and unsafe manner, pursuant to said authority given it;'' that
by reason of the negligent manner in which said gas heater was
installed and connected up, the building was burned and plaint-
iff's property destroyed.

''Negligence is the want of care. It is the violation of a duty
which one owes to so conduct himself and his business as not to
injure others in person or property. In other words, it is the
want of such degree of care as a person of ordinary prudence
or foresight would exercise under like circumstances.''

The question whether the doing of a certain act or thing is
negligence depends largely upon the circumstances surround-
ing each particular case. Under certain circumstances and sur-
roundings an act may be entirely proper and harmless, while
the same act done under other and different circumstances
would be grossly negligent or even criminal, depending en-
tirely on the time, place and circumstances at and under which
the act is done.

We think there was evidence of negligence quite sufficient to
warrant the jury in returning its verdict for plaintiff Marks,
and that the court committed no error in entering judgment
thereon.

The plaintiff in error further contends that the Logan Natu-
ral Gas Company occupied the relation of an ''independent
contractor,'' and that the city can not be held for the negligent
acts of such contractor; and counsel have prepared and sub-
mitted to the court a very able and elaborate brief on the law
of ''independent contracts'' and the rule exempting employers
from liability for damages where work is done by an ''inde-
pendent contractor.''

This issue is not made in the pleadings, and the second
amended answer, upon which this case was tried, makes no aver-
ment as to an ''independent contractor.'' Little if any evi-
dence appears in the record tending to establish the claim made
in argument that the gas company in its relation to the village
was an ''independent contractor.'' We may nevertheless ex-
press our views upon that phase of the case.

We think the record falls very short of establishing a case of
''independent contractor,'' from whatever angle it may be

viewed. Whether a person occupies the relation of an "independent contractor" must be determined from the terms and conditions of the contract. If the contract is in writing the language of the instrument will determine.

We have heretofore noted the fact that there was no written contract between the village and the gas company. The minutes of the proceedings of the city council are most meager and throw but little light upon the subject or the terms of the contract, if any was had. The village owned an opera house building, containing at least three rooms on the lower or ground floor, occupied by tenants, to whom the city owed a duty of protection against damage to person or property from wrongful or negligent acts of itself, its agents or employees. The upper or second story was used as an auditorium, where the public generally were invited to assemble and witness public entertainments at all times. The auditorium being a place of public resort, and being under the care and control of the village authorities, a very high degree of care for the protection and safety of the public was imposed upon those charged with so great a responsibility.

If those in charge of such a place wished to "experiment" with a dangerous appliance for heating, common prudence and a proper regard for the public safety would seem to have dictated that the experiment and test of the efficiency of the apparatus be made in some other place than the auditorium of an opera house. Yet the record discloses that the village council "authorized and permitted" the Logan gas company to install in the auditorium of this public hall one of its new and untested heating apparatuses "as an experiment," with the agreement that if it proved satisfactory, the city would permit the Logan Gas Company to install two of its apparatuses. If not, they would not pay for the one installed.

In pursuance of this agreement the gas company installed the heating apparatus, which the record we think fairly shows caused the destruction of the building, practically within two days after the gas was turned into it. It is fortunate that the fire happened at the noon hour instead of at night, when the auditorium might have been filled by citizens of Ashland.

It is true, as a general rule, that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful or of such a nature that it is likely to become a nuisance, or to subject other persons to unusual danger, according to the contractor's own methods, and they being subject to control, except as to the result of his work, and *subject to other qualifications* hereinafter stated, will not be answerable for the wrongs of such contractor * * * in the prosecution of such work." See *Thompson on Negligence,* Section 621.

But the case at bar does not fall within the rule just quoted for the obvious reason that it is not shown that the work done by the gas company was not subject to the control of the village. On the contrary the record shows that one of the members of the council at least, McAdoo, was in charge and had supervision of the installing of this heater.

Moreover, one of the "other qualifications" of the rule is "that if the master authorizes or directs the doing of the particular thing," he is liable for the negligence of the servant; * * * this liability rests upon the general rule of *respondeat superior.* * * * This rule is founded on the power of control and direction, which the superior has the right to exercise, and which for the safety of other persons he is bound to exercise over the acts of his subordinates.

There is a class of cases where the liability of the employer can not be avoided by the employment of an "independent contractor." One exception to this rule is found where the employer, from the nature and character of the work, is under a duty to other persons to see that the work is carefully and properly performed. There is a class of cases where the owner of property is under such obligation to strangers and other persons to see that any work done on such property is done in a manner not to injure such persons or strangers, *and the law will not permit him to escape this liability by the intervention of an "independent contractor."*

When the evidence brings any given case within this class, the employer will be held liable notwithstanding any contract

he may make with a third person to perform the work. *Thompson on Negligence,* Section 539; 61 O. S., 222.

We think the case at bar, as shown by the evidence, is brought clearly within the foregoing rule. Moreover, the evidence shows that the village authorities not only directed where the heater should be placed, but reserved control over the manner of doing the work. They were present while the work was being done, supervised it, and inspected it after it was done.

We are of the opinion that the relation between the parties to the work in the case at bar was not an independent one, and that the rule of *respondeat superior* applies.

It is urged by counsel for plaintiff in error in their brief, but it is not one of the grounds assigned in the petition in error, "that the petition in the trial below went to the jury when they retired to deliberate, and we think the plaintiff should have filed an amended petition eliminating all reference to the Logan Natural Gas & Fuel Company;" and they therefore claim that they were prejudiced by the submission of the case to the jury in the form in which the petition went to the jury; that the allegations of the petition against the Logan Natural Gas & Fuel Company would have a tendency to prejudice the minds of the jury and to confuse the jury in their deliberations.

We do not think so. First, the record fails to disclose that counsel for plaintiff in error (defendant below) offered any objection to the submission of the case in the manner in which it was submitted, nor did they suggest to the court the propriety of requiring the plaintiff below to amend his petition, eliminating the Logan Natural Gas & Fuel Company. Moreover, we find that the court gave them complete protection in his charge, wherein he instructed the jury that they should not consider the averments of the petition relating to the Logan Natural Gas & Fuel Company, "for the reason that the Logan Natural Gas & Fuel Company had been dismissed from the case, and all allusion to it as a defendant in the case should be eliminated from your consideration."

We may notice one further claim urged upon the court by plaintiff in error. The answer of the plaintiff in error charges

negligence upon the plaintiff below, and avers that he was negligent in that he locked the doors of his place of business and was not diligent in removing his wares from the building, and by reason of that negligence he suffered the loss.

No negligence is imputed to Marks as to the method of installing the apparatus, or as to the primary cause of the injury, to-wit: the explosion of the gas, the burning of the building, which destroyed or damaged his property. But the negligence charged to Marks was in his failure to remove or permit the removal of his property from the burning building.

The negligence, if established, would not wholly defeat a recovery, but would only go to the extent and amount of the loss occasioned by his negligence in the reduction of the amount of recovery.

On the other hand, it is insisted that even though Marks might have removed some of his goods, he could not possibly have removed all, and that in the very nature of things he would be entitled to recover from the defendant (plaintiff in error) if the defendant was at all responsible to him for anything of value of so much of the goods as he could not have saved.

This question was fairly put to the jury by the court, and the jury were instructed to consider the evidence reflecting upon Mark's action in locking the door, if they found the door was locked, and in his negligence in failing to remove or to permit the removal of his goods, if they found that such refusal was shown in the evidence.

We think the instruction of the court was right, and that the plaintiff in error was thoroughly protected by the court's charge. It would appear from the amount of the recovery, as compared with the amount of loss sustained, that the jury must have regarded the court's charge in that respect and returned a verdict in such an amount as they found the plaintiff had been damaged.

Upon a full consideration of the whole case we have reached the conclusion that there is no error apparent in the record prejudicial to the plaintiff in error, and the judgment is affirmed with costs but without penalty. Cause remanded for execution; exceptions will be noted.